Filed 11/19/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PATTY ANN LAMOUREUX,<br><br>    Defendant and Appellant. | D075794<br><br><br>(Super. Ct. No. SWF1101646) |

APPEAL from an order of the Superior Court of Riverside County, John D. Molloy, Judge.  Reversed.


Michelle May Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae on behalf of Defendant and Appellant.

Michael A. Hestrin, District Attorney, and Alan D. Tate, Deputy District Attorney, for Plaintiff and Respondent.

# I

## INTRODUCTION

In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (Senate Bill 1437), legislation that prospectively amended the mens rea requirements for the offense of murder and restricted the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine.  (Stats. 2018, ch. 1015.)  Senate Bill 1437 also established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts.  (*Id.*, § 3.)

Patty Ann Lamoureux appeals an order denying her petition to vacate a first degree murder conviction and obtain resentencing under the procedures established by Senate Bill 1437.  The trial court denied the petition after concluding the resentencing provision of Senate Bill 1437 invalidly amended Proposition 7, a voter initiative that increased the punishments for persons convicted of murder.  (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978) (Proposition 7).)  The People urge us to affirm the denial order on grounds that:  (1) Senate Bill 1437 invalidly amended Proposition 7; (2) Senate Bill 1437 invalidly amended Proposition 115, a voter initiative that augmented the list of predicate offenses for first degree felony-murder liability (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990) (Proposition 115)); (3) the resentencing provision violates the separation of powers doctrine; and/or (4) the resentencing

2

provision deprives crime victims the rights afforded them by the Victims' Bill of Rights Act of 2008, commonly known as Marsy's Law (Prop. 9, as approved by voters, Gen. Elec. (Nov. 4, 2008) (Proposition 9)).

In *People v. Superior Court (Gooden)* (Nov. 19, 2019, D075787) ___ Cal.App.5th ___ (*Gooden*), a companion case issued concurrently herewith, we concluded Senate Bill 1437 did not invalidly amend Proposition 7 or Proposition 115. For the reasons discussed more fully in the *Gooden* opinion, we reach the same determination here. Further, we conclude the resentencing provision of Senate Bill 1437 does not contravene separation of powers principles or violate the rights of crime victims. Therefore, we find no constitutional infirmity with Senate Bill 1437, and we reverse the order denying Lamoureux's petition.

II

BACKGROUND

A

In 2013, a jury convicted Lamoureux of conspiracy to commit robbery (Pen. Code, § 182, subd. (a)(1))[1] and felony murder (§ 187, subd. (a)) arising from the killing of a friend's family member. It found true special circumstance allegations that: (1) the murder was perpetrated during the commission of a robbery and a burglary (§ 190.2, subd. (a)(17)); and (2) Lamoureux, though not the actual killer, had an intent to kill or acted with reckless indifference to human life and was a major participant in the predicate

---

[1]     All further statutory references are to the Penal Code, unless otherwise noted.

felony (*id.*, subds. (c) & (d)).  She was sentenced to prison for life without the possibility of parole.

This court affirmed the murder and conspiracy convictions, but concluded the evidence was insufficient to support the finding that Lamoureux had an intent to kill or acted with reckless indifference to human life.  (*People v. Miller* (Sept. 15, 2015, D067451) [nonpub. opn.], review den. Dec. 9, 2015.)  Therefore, we concluded she was not eligible for the imposition of a life sentence without the possibility of parole, reversed the judgment, in part, and remanded the matter for resentencing.  (*Ibid.*)  On January 5, 2016, the trial court resentenced Lamoureux to a prison term of 25 years to life.

B

In 2018, after Lamoureux's judgment of conviction became final, the Legislature enacted and the Governor signed Senate Bill 1437, effective January 1, 2019.  (Stats. 2018, ch. 1015.)  An uncodified section of the law expressing the Legislature's findings and declarations states the law was "necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (*Id.*, § 1, subd. (f).)  It further provides that the legislation was needed "to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual."  (*Id.*, § 1, subd. (e).)

4

Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state. (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.) " 'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life.' " (*Id.* at p. 1184.) "The purpose of the felony-murder rule [was] to deter those who commit[ted] the enumerated felonies from killing by holding them strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony." (*People v. Cavitt* (2004) 33 Cal.4th 187, 197.)

Independent of the felony-murder rule, the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense. (*People v. Chiu* (2014) 59 Cal.4th 155, 161–162.) " 'Because the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.' " (*People v. Flores* (2016) 2 Cal.App.5th 855, 867.)

Senate Bill 1437 restricted the application of the felony murder rule and the natural and probable consequences doctrine, as applied to murder, by amending section

5

189, which defines the degrees of murder.  (Stats. 2018, ch. 1015, § 3.)  Section 189, subdivision (e), as amended, provides that a participant in a specified felony is liable for murder for a death during the commission of the offense only if one of the following is proven:  "(1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life …."[2]

Senate Bill 1437 also "added a crucial limitation" to section 188, the statutory provision that defines malice for purposes of murder.  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1099, review granted Nov. 13, 2019, S258175 (*Lopez*).)  As amended, section 188 provides in pertinent part as follows:  "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (*Id.*, subd. (a)(3).)

Finally, Senate Bill 1437 added section 1170.95 to the Penal Code.  Section 1170.95 permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the murder conviction and resentence the person on any remaining counts if the following conditions

---

[2]    Section 189, subdivision (e) does not apply when the victim is a peace officer who was killed while in the course of his or her duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties.  (*Id.*, subd. (f).)

6

are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of [the] changes to [s]ection 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a).)

If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and, absent a waiver and stipulation by the parties, hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subds. (c) & (d)(1).) At the resentencing hearing, the parties may rely on the record of conviction or offer new or additional evidence, and the prosecution bears the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (*Id.*, subd. (d)(3).)

If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner resentenced "on any remaining counts in the same manner as if the petitioner had not been [*sic*] previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) If the petitioner is found eligible for relief, but "murder was charged generically[] and the target offense was not charged," the petitioner's murder conviction must be "redesignated as the target offense or underlying felony for resentencing purposes." (*Id.*, subd. (e).)

7

## C

On January 11, 2019, Lamoureux filed a resentencing petition under section 1170.95. The People opposed the petition on grounds that the amendments effectuated by Senate Bill 1437 were unconstitutional, in whole or part, for four reasons.

First, they argued Senate Bill 1437 invalidly amended Proposition 7, a voter initiative that increased the punishment for first degree murder from a term of life imprisonment with parole eligibility after seven years to a term of 25 years to life, and increased the punishment for second degree murder from a term of five, six, or seven years to a term of 15 years to life. (Prop. 7, §§ 1–2.) Second, they contended Senate Bill 1437 invalidly amended Proposition 115, a voter initiative that augmented the list of predicate offenses giving rise to first degree felony-murder liability. (Prop. 115, § 9.) Third, they claimed section 1170.95 violated the separation of powers doctrine because it impermissibly interfered with a core judicial function of resolving specific controversies between parties. Fourth, they argued section 1170.95 violated Marsy's Law.

The trial court concluded section 1170.95 invalidly amended Proposition 7 and denied Lamoureux's petition on that basis without addressing the People's remaining arguments. In pertinent part, the court reasoned as follows: "[T]he voters' intent in enacting Proposition 7 was straightforward: if you are lawfully convicted of murder, then your minimum sentence is 25 [years]to[]life or 15 [years]to[]life, depending on degree. This intent doesn't necessarily preclude the Legislature from prospectively modifying the law of murder around the margins … but it does preclude the Legislature from retroactively redefining murder to vacate convictions that were unquestionably lawful at

the time they were entered, thus effectively granting a legislative commutation and reducing the punishment that the electorate mandated for murder…."

Lamoureux appealed the order denying her resentencing petition. The Attorney General permitted the Office of the District Attorney of Riverside County to represent the People's interests in this appeal and, for its part, filed an amicus curiae brief defending the constitutionality of Senate Bill 1437.

## III

## DISCUSSION

### A

Under Article II, section 10 of the California Constitution, a statute enacted by voter initiative may be amended or repealed by the Legislature only with the approval of the electorate, unless the initiative statute provides otherwise. (Cal. Const., art. II, § 10, subd. (c).) The purpose of this limitation is to " ' "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent." ' " (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025.)

The People argue Senate Bill 1437 violated the rule limiting legislative amendments to voter initiatives because Senate Bill 1437 purportedly amended Proposition 7 without receiving the approval of the voters. Further, they claim Senate Bill 1437 violated the legislative amendment rule on grounds that it amended Proposition

9

115 without receiving voter approval or two-thirds approval from the Legislature.[3]  The trial court accepted the first of these arguments, at least in part, when it found that section 1170.95 constituted an invalid amendment to Proposition 7.  However, in *Gooden*, *supra*, ___ Cal.App.5th ___, we rejected both of the People's arguments.  We do so here as well.

As we explained in the *Gooden* decision, Senate Bill 1437 did not amend Proposition 7 because it did not "address the same subject matter [as Proposition 7].  It did not prohibit what Proposition 7 authorizes by, for example, prohibiting a punishment of 25 years to life for first degree murder or 15 years to life for second degree murder.  Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder.  In short, it did not address punishment at all." (*Gooden, supra*, ___ Cal.App.5th at p. ___ [p. 14].)  Because Senate Bill 1437 and Proposition 7 concerned different subjects, we concluded Proposition 7 did not foreclose the Legislature from enacting Senate Bill 1437 to amend the mental state requirements for murder under the felony-murder rule and the natural and probable consequences doctrine.  (*Id.* at p. ___ [pp. 12–21].)  Our analysis applied to all the legislative amendments effectuated by Senate Bill 1437, including section 1170.95.  (*Id.* at p. ___ [pp. 20–21.)

*Gooden* also concluded Senate Bill 1437 did not amend Proposition 115.  (*Gooden*, *supra*, ___ Cal.App.5th at pp. ___ [pp. 21–24].)  As we explained in that case, Senate Bill 1437 "addresse[d] a matter related to the subject" matter of Proposition 115

_____

3      Proposition 115 authorized the Legislature to amend its provisions by a two-thirds vote of each house.  (Prop. 115, § 30.)

10

because both measures altered the circumstances under which a person may be liable for felony murder. (*Id.* at pp. __ [pp. 21–22].) However, Senate Bill 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based, which [was] the pertinent subject matter of Proposition 115." (*Id.* at p. __ [p. 22].) On this basis, we determined Senate Bill 1437 did not amend Proposition.

For the foregoing reasons, which are discussed more fully in the *Gooden* decision, we conclude Senate Bill 1437 did not invalidly amend Proposition 7 or Proposition 115.[4]

B

As noted *ante*, the People assert additional challenges to the constitutionality of the resentencing procedure created by section 1170.95—arguments not asserted or addressed in the *Gooden* appeal. They contend section 1170.95 usurps the executive's clemency power in contravention of separation of powers principles because it "legally erases" petitioners' murder convictions and the penalties attached thereto. Additionally, they contend section 1170.95 impairs a core function of the judiciary because it provides for the retroactive reopening of final judgments. We address these separation of powers arguments in the following sections.

1

---

[4] Lamoureux filed a request for judicial notice of a legislative report on Senate Bill 1437 and ballot materials for Proposition 7 and Proposition 115. Because we reject the People's invalid amendment arguments for the reasons set forth in the *Gooden* decision, we deny the request for judicial notice as unnecessary. (*Landstar Global Logistics, Inc. v. Robinson & Robinson, Inc.* (2013) 216 Cal.App.4th 378, 383, fn. 2.)

"The California Constitution establishes a system of state government in which power is divided among three coequal branches (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]), and further states that those charged with the exercise of one power may not exercise any other (Cal. Const., art. III, § 3)."  (*People v. Bunn* (2002) 27 Cal.4th 1, 14 (*Bunn*).)  This division of power " ' " ' "limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch." ' " ' "  (*In re Lira* (2014) 58 Cal.4th 573, 583.)  Through this limitation, we "avoid both the 'concentration of power in a single branch of government,' and the 'overreaching' by one branch against the others."  (*Bunn*, at p. 16.)

To determine whether one branch of government has misappropriated a core or essential function of another in the case at hand, we must first review the pertinent roles of each government branch.  "The core functions of the legislative branch include passing laws, levying taxes, and making appropriations."  (*Carmel Valley Fire Protection Dist. v. Cal.* (2001) 25 Cal.4th 287, 299.)  Encompassed within the Legislature's core function of passing laws is the responsibility of defining crimes and prescribing punishments. (*People v. Anderson* (2009) 47 Cal.4th 92, 118–119; see *People v. Gonzalez* (2014) 60 Cal.4th 533, 538 [" 'Only the Legislature … may make conduct criminal.' "].)

The Constitution vests "supreme executive power" in the Governor.  (Cal. Const., art. V, § 1.)  Among other powers, the Governor possesses constitutional authority to "grant a reprieve, pardon, and commutation, after sentence, except in case of

12

impeachment."[5]  (*Id.*, § 8.)  The clemency authority is exclusive to the Governor.  (*Santos*, *supra*, 238 Cal.App.4th at p. 418; *In re Fain* (1983) 145 Cal.App.3d 540, 548.)

Finally, the judiciary "resolve[s] 'specific controversies' between parties. [Citation.]  In such proceedings, existing laws … are interpreted and applied."  (*Bunn*, *supra*, 27 Cal.4th at p. 15; see *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1104 ["Courts are empowered to decide controversies, a power derived from the state constitution."].)  The function of resolving specific controversies between parties includes the power to dispose of criminal charges filed by and on behalf of the People.  (*People v. Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 66 ["[W]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the *[d]isposition* of that charge becomes a judicial responsibility."].)

" 'Although article III, section 3 of the California Constitution "defines a system of government in which the powers of the three branches are to be kept largely separate, it also comprehends the existence of common boundaries between the legislative, judicial, and executive zones of power thus created…." ' "  (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662 (*Rosenkrantz*); see *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 390 [" '[T]he substantial interrelatedness of the three branches' actions is apparent and commonplace ….' "]; *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 76 ["From the beginning, each branch has exercised all three kinds of powers."].)

---

5      "Commutation is a reduction in punishment; a pardon is the remission of guilt and relief from the legal consequences of the crime; and a reprieve is a temporary suspension of execution of sentence."  (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 413–414 (*Santos*).)

Therefore, "the separation of powers doctrine has never been applied rigidly." (*Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172, 183, 184; see *Rosenkrantz, supra*, 29 Cal.4th at p. 662 [" '[T]he separation of powers principle does not command "a hermetic sealing off of the three branches of Government from one another." ' "].) Instead, it is violated "only when the actions of a branch of government defeat or materially impair the inherent functions of another branch." (*Rosenkrantz*, at p. 662.) Further, it " 'recognizes that the three branches of government are interdependent, and it permits actions of one branch that may "significantly affect those of another branch." ' " (*Ibid.*; see, e.g., *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 43–52 [legislative appointment of members to California Coastal Commission did not intrude upon core executive functions]; *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52–66 [legislation allowing county to designate unpaid furlough days and court closures did not impermissibly restrict judicial functions].)

2

With these principles in mind, we begin with the People's contention that section 1170.95 is an improper legislative encroachment upon the executive clemency power. "One recognized function of the clemency power is the exercise of mercy—a value that has generally been thought to be peculiarly the province of the executive." (*Procedures for Considering Requests for Recommendations Concerning Applications for Pardon or Commutation* (2018) 4 Cal.5th 897, 898.) The People contend section 1170.95 intrudes upon the executive's clemency authority by establishing a means to "erase[]" convictions

14

and reduce punishment. Based on the following authorities addressing the separation of powers doctrine in the clemency context, we disagree.

In *Way v. Superior Court* (1977) 74 Cal.App.3d 165 (*Way*), plaintiffs consisting of superior court judges, district attorneys, and other interested individuals sought to enjoin the implementation of a provision in the newly-enacted Uniform Determinate Sentencing Act of 1976 (the UDSA; Stats. 1976, ch. 1139). The provision applied retroactively and, in most cases, permitted prisoners sentenced under the since-repealed Indeterminate Sentence Law to obtain early parole release dates if their prison terms would have been shorter under the new UDSA. (*Way*, at p. 172.) The plaintiffs argued the retroactive application of the UDSA violated the separation of powers doctrine by infringing on the Governor's clemency authority. (*Id.* at p. 169.)

The *Way* court disagreed. (*Way*, *supra*, 74 Cal.App.3d at pp. 176–177.) Although the parole provision had "the effect of commutation in certain cases," the *Way* court concluded this outcome was "purely incidental to the main legislative purpose" of the provision, which was to ensure "felons concurrently serving sentences for identical offenses [were not] subject to disparate terms solely because of the time when they committed their crimes." (*Id.* at p. 177.) Because the Legislature did not enact the provision to extend an "act of mercy, grace, or forgiveness," and the reduction of final sentences was "incidental" to a "comprehensive reformation of California's penal system," the *Way* court determined the Legislature did not impermissibly "exercise[] *the complete power* constitutionally delegated" to the executive. (*Id.* at pp. 177, 178; see *In re Chavez* (2004) 114 Cal.App.4th 989, 1001 (*Chavez*) [following the *Way* decision and

15

rejecting separation of powers challenge to legislation changing punishment from indeterminate term to determinate term].)

The Supreme Court cited the *Way* decision with approval in *Younger v. Superior Court* (1978) 21 Cal.3d 102 (*Younger*). At issue in *Younger* was a statute permitting an application to be submitted to the Department of Justice for the destruction of arrest and conviction records for marijuana possession. (*Id.* at p. 111.) The petitioner in *Younger* filed an application in accordance with the statute, the Attorney General declined to act citing separation of powers concerns, and the petitioner sought writ relief to compel the Attorney General to comply with his statutory obligations. (*Id.* at pp. 108, 112.)

The *Younger* court ordered issuance of the writ. It acknowledged "the effects of [a records destruction] order [were] similar to certain effects of a gubernatorial pardon for the same offense," but nevertheless held there was no separation of powers violation. (*Younger*, *supra*, 21 Cal.3d at p. 117.) The *Younger* court reasoned the records destruction law was not enacted "as an act of grace," but rather to "implement[] the Legislature's principal objective of reducing the adverse social and personal effects of [a] conviction which linger long after the prescribed punishment has been completed." (*Id.* at p. 118.) Borrowing language from *Way*, the *Younger* court concluded "[a]ny infringement on the power of executive clemency [was] … purely incidental to the main purpose of the statute … and hence [did] not violate the separation of powers." (*Ibid.*)

We conclude the rationale of the *Way* and *Younger* decisions is directly applicable here. Like the challenged laws in the *Younger* and *Way* cases, section 1170.95 can produce outcomes resembling the consequences of an executive commutation.

16

Specifically, in cases where a petitioner makes a prima facie showing of entitlement to relief (§ 1170.95, subd. (c)), and the prosecution fails to carry its burden of proving the petitioner is ineligible for resentencing (*id.*, subd. (d)(3)), murder sentences may be vacated and sentences recalled (*id.*, subd. (d)(1)). Although section 1170.95 requires resentencing on remaining counts, such that a given prisoner's overall sentence may not actually be shortened (*id.*, subd. (d)(1)), it is apparent and undisputed that at least some successful petitioners will obtain shorter sentences or even release from prison.

However, the objective of the Legislature in approving section 1170.95—like the legislative aims underpinning the challenged laws in the *Way* and *Younger* cases—was not to extend "an act of grace" to petitioners. (*Younger*, *supra*, 21 Cal.3d at p. 118; *Way*, *supra*, 74 Cal.App.3d at pp. 177–178.) Rather, the Legislature's statement of findings and declarations confirms it approved Senate Bill 1437 as part of a broad penal reform effort. The purpose of that undertaking was to ensure our state's murder laws "fairly address[] the culpability of the individual and assist[] in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (Stats. 2018, ch. 1015, § 1, subd. (e); see *People v. Munoz* (2019) 39 Cal.App.5th 738, 763 (*Munoz*) [discussing "the Legislature's dual intents [in enacting Senate Bill 1437]—making conviction and punishment commensurate with liability, and reducing prison overcrowding"].)

The outcome of a successful petition under section 1170.95 further underscores the fact that section 1170.95 is not merely an act of grace akin to an exercise of executive clemency. As noted *ante*, "[a] successful Senate Bill 1437 petitioner's criminal

17

culpability does not simply evaporate; a meritorious section 1170.95 petition is not a get-out-of-jail free card. Instead, the petitioner is resentenced on the remaining convictions. If the murder was charged 'generically' and the target offense was not charged, the murder conviction must be redesignated as the target offense or underlying felony for resentencing purposes." (*Munoz, supra*, 39 Cal.App.5th at pp. 764–765.) Thus, while some qualifying petitioners certainly may obtain reduced prison sentences under section 1170.95, there is no guarantee of such an outcome.

In accordance with the *Younger* and *Way* decisions, it is clear to us that section 1170.95's interference with the executive's clemency authority, if any, is merely incidental to the main legislative purpose of Senate Bill 1437. Therefore, we conclude section 1170.95 does not impermissibly encroach upon the core functions of the executive.

3

The People claim section 1170.95 violates the separation of powers doctrine in a second respect. They argue section 1170.95 does not distinguish between prisoners serving final and nonfinal sentences as of the effective date of the legislation (January 1, 2019), thus entitling both categories of prisoners to petition for relief. They contend the Legislature impaired the judiciary's core function of resolving controversies between parties insofar as section 1170.95 permits prisoners serving final sentences to seek relief.

a

As an initial matter, we agree with the People's reading of the scope of section 1170.95. Under section 1170.95, petitioners may seek retroactive relief entitling them to

18

vacate qualifying murder convictions and obtain resentencing on any remaining counts. "[S]ection 1170.95 does not distinguish between persons whose sentences are final and those whose sentences are not." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 727; see also *Munoz*, *supra*, 39 Cal.App.5th at p. 752; *Lopez*, *supra*, 38 Cal.App.5th at p. 1099.) Thus, as a matter of statutory interpretation, petitioners may obtain relief under section 1170.95 irrespective of whether their murder convictions were final as of January 1, 2019. (*Martinez*, at p. 727; see also *Munoz*, at pp. 751–752; *Lopez*, at p. 1114.)

b

Relying principally on *Bunn*, *supra*, 27 Cal.4th 1, the People contend the retroactive application of section 1170.95 to prisoners serving final sentences constitutes a separation of powers violation because it permits final judgments of conviction to be reopened. According to the People, this feature intrudes upon a core function of the judiciary—resolving specific controversies between parties. The California Supreme Court issued the *Bunn* decision together with a companion case, *People v. King* (2002) 27 Cal.4th 29 (*King*). Because the *Bunn* and *King* decisions draw heavily from the United States Supreme Court's decision in *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211 (*Plaut*), we will first address the *Plaut* decision before discussing the *Bunn* and *King* decisions.

In *Plaut*, plaintiffs filed a fraud action in federal court based on alleged violations of the federal securities laws. (*Plaut*, *supra*, 514 U.S. at p. 213.) At the time, federal courts were required to " 'borrow[]' " the analogous state statute of limitations in the jurisdiction in which the action was pending. (*Id.* at p. 250 (dis. opn. of Stevens, J.).)

19

However, after the plaintiffs filed their case, the United States Supreme Court issued *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson* (1991) 501 U.S. 350 (*Lampf*), which—together with a companion case—adopted a uniform federal limitations rule shorter than the one on which the plaintiffs relied and applied the new statute of limitations retroactively. (*Plaut*, at pp. 213–214; *id.* at pp. 249–250 (dis. opn. of Stevens, J.).) Based on *Lampf*, the district court dismissed plaintiffs' action as untimely and the judgment ultimately became final. (*Id.* at p. 214.)

Congress responded to the *Lampf* decision by passing legislation repudiating the retroactive effect of the new limitations period. (*Plaut*, *supra*, 514 U.S. at pp. 214–215.) The new legislation restored the pre-*Lampf* limitations period for two types of cases filed before the *Lampf* decision was issued—(1) cases pending when the new legislation went into effect; and (2) cases dismissed as time-barred between the filing of the *Lampf* decision and the effective date of the new legislation. (*Ibid.*) Further, the new legislation permitted plaintiffs to seek reinstatement of dismissed actions. (*Id.* at p. 215.) The *Plaut* plaintiffs sought reinstatement of their action in accordance with the refiling provision, but the district court dismissed the case on grounds that the refiling provision violated the separation of powers doctrine. (*Ibid.*) The Sixth Circuit Court of Appeals affirmed and the United States Supreme Court granted review. (*Ibid.*)

The high court began its separation of powers analysis with a declaration that the judicial power exercised by article III courts includes the power to " 'render dispositive judgments' "—a power Congress violated when it commanded courts to reopen final judgments. (*Plaut*, *supra*, 514 U.S. at pp. 219, 223.) The *Plaut* court engaged in an

20

extensive discussion of the historical roots animating the federal constitutional principle limiting legislative interference with final judgments. (*Id.* at pp. 219–225.) As the *Plaut* court explained, early colonial assemblies and legislatures routinely functioned as courts of equity of last resort or otherwise corrected the judicial process by enacting special bills to set aside judgments and order new trials or appeals. (*Id.* at pp. 219–223.) According to the *Plaut* court, the ratification of the federal Constitution fundamentally altered these practices by separating "the legislative power to make general law from the judicial power to apply that law in particular cases …." (*Id.* at pp. 224, 225.)

The *Plaut* court concluded the refiling provision at issue violated these federal separation of powers principles, reasoning in pertinent part as follows: "When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.' " (*Plaut*, *supra*, 514 U.S. at p. 225.) According to the *Plaut* court, the separation of powers violation existed even though the refiling provision at issue affected "a whole class of cases rather than … a particular suit." (*Id.* at p. 227.)

However, the *Plaut* court set limits on the scope of its ruling. Because the judicial branch consists of a hierarchy of courts, the *Plaut* court explained a judgment does not achieve finality for federal separation of powers purposes until the time for an appeal has passed or an appeal has been pursued and the review process has been completed. (*Plaut*, *supra*, 514 U.S. at pp. 226–227.) Further, it held that separation of powers principles would not be violated if a statute authorizing the reopening of a judgment was already in effect when a judgment became final because the reopening law would, in effect, be

21

"built into the judgment itself, and its finality … so conditioned." (*Id.* at p. 234.) Because the judgment against the *Plaut* plaintiffs was final *before* Congress enacted the refiling provision, the plaintiffs were precluded from invoking the refiling provision.

The *Plaut* decision featured prominently in the *Bunn* decision, on which the People rely in this appeal. *Bunn* concerned legislation that extended the statute of limitations for the prosecution of sex offenses committed against children. (*Bunn*, *supra*, 27 Cal.4th at p. 6.) After the Legislature enacted the new law, some courts concluded the new limitations period did not apply retroactively if prosecution of an offense was time-barred when the law went into effect. (*Id.* at pp. 7–8.) In response to these decisions, the Legislature passed further legislation providing that the new statute of limitations applied retroactively, even if the limitations period expired prior to the effective date of the new legislation. (*Id.* at pp. 9–10.) Further, the Legislature enacted a savings clause permitting the refiling of otherwise time-barred actions that had been filed and dismissed before the retroactivity language and savings clause were enacted. (*Id.* at pp. 10–11.) "The apparent purpose was to prevent the affected group [of defendants] from escaping prosecution, or from receiving more favorable statute of limitations treatment than other molestation defendants whose cases were never prosecuted under the [extended statute of limitations], or, if so prosecuted, were not dismissed …." (*Id.* at p. 11.)

In *Bunn*, a defendant obtained a judgment of dismissal as to charges of sex offenses committed against a child, but was reprosecuted under the new statute of limitations and refiling provision. The Supreme Court granted review to assess the constitutionality of the refiling provision under state separation of powers principles and

22

concluded "*Plaut* [was] persuasive for purposes of interpreting California's separation of powers clause…." (*Bunn*, *supra*, 27 Cal.4th at pp. 22, 23.) Applying the *Plaut* court's holding, our Supreme Court concluded "a refiling provision … cannot be retroactively applied to subvert judgments that became final before the provision took effect, and before the law of finality changed." (*Id.* at p. 24.) In the *Bunn* case, the Legislature enacted the refiling provision *before* the judgment of dismissal became final. Therefore, separation of powers principles did not prohibit the prosecution from refiling criminal charges against the defendant under the new limitations period. (*Id.* at pp. 26–27.)

In *King*—a companion decision issued concurrently with *Bunn*—a defendant also obtained a judgment of dismissal in a case involving alleged sex offenses committed against children. (*King*, *supra*, 27 Cal.4th at p. 32.) But, unlike *Bunn*, the Legislature enacted the refiling provision *after* the *King* defendant's judgment of dismissal became final. Therefore, the Supreme Court concluded the refiling provision could not be retroactively applied to the defendant in the *King* case. (*Id.* at pp. 36–37.)

c

Relying on the *Bunn* and *King* decisions, the People claim section 1170.95 violates state separation of powers principles. They argue the *Bunn* and *King* decisions stand for the proposition that final judgments may never be reopened if legislation authorizing such reopening was not in effect when the judgments at issue became final. We do not read the *Bunn* and *King* decisions so expansively.

The *Bunn* and *King* courts addressed a situation starkly different than the one before us. In those cases, the issue as framed by the Supreme Court was as follows:

23

"[The Legislature] authorize[d] … the filing of a molestation charge even where an accusatory pleading involving the same offense was previously dismissed as time-barred by the courts.  The question is whether, and to what extent, the separation of powers clause of the California Constitution (art. III, § 3) precludes application of such a refiling provision."  (*Bunn*, *supra*, 27 Cal.4th at p. 5; see *King*, *supra*, 27 Cal.4th at p. 31.)  Stated differently, the matter at hand was whether the People could rely on refiling legislation to reprosecute a defendant who obtained a judgment of dismissal that became final prior to the effective date of the refiling legislation.  (*Bunn*, at p. 14 ["We focus here on the constitutional roles of the Legislature and the judiciary, particularly with respect to criminal statutes of limitation and *judgments of dismissal* obtained thereunder."  (italics added)].)  As discussed *ante*, our Supreme Court answered this question in the negative.

The answer reached by the Supreme Court is unsurprising in view of the fundamental purposes underlying the separation of powers doctrine.  Power is diffused between coequal branches of government not as an end to itself, but rather to protect the liberty of individuals.  (*Buckley v. Valeo* (1976) 424 U.S. 1, 122; see *Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1060 ["Separation of powers protects liberty …."] (conc. opn. of Liu, J.); *Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 188 (*Perez*) [separation of powers "is ultimately about the competing rights of individual parties"]; Brown, *Separated Powers and Ordered Liberty* (1991) 139 U.Pa. L.Rev. 1513, 1514 ["[T]he structure of the government is a vital part of a constitutional organism whose final cause is the protection of individual rights."].)  A bright-line rule prohibiting interference with final judgments of dismissal in favor of criminal defendants dovetails

24

with this aim, as it eliminates the risk criminal defendants will be subject to retrial for the same offenses of which they were acquitted and—if convicted the second time around—deprived of their individual liberty interests by means of incarceration.

Our courts have also applied the state separation of powers doctrine to prohibit legislation authorizing the retroactive reopening of final judgments obtained in favor of private parties against the government (*Mandel v. Myers* (1981) 29 Cal.3d 531, 545–551), as well as legislation authorizing the retroactive reopening of final judgments between private parties (*Perez, supra,* 146 Cal.App.4th at pp. 182–190). In such cases, the prohibition against retroactive reopening of final judgments once again furthered the individual liberty underpinnings of the separation of powers doctrine—private litigants who "years ago obtained favorable judgments based on the law as it then existed, likely incurring substantial attorney's fees in order to do so," were not deprived of the final judgments they obtained and on which they may have relied. (*Perez*, at p. 188.)

The case at hand stands on different footing. Unlike legislation authorizing the refiling of criminal charges against a previously-acquitted defendant, or the refiling of actions between private parties, section 1170.95 does not present any risk to individual liberty interests. On the contrary, it provides potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution—the criminal defendant himself or herself. In such cases, we do not believe the separation of powers analysis conducted in *Bunn* and *King* controls. Indeed, the parties have directed us to no decisions applying the *Bunn* and *King* separation of powers analysis to bar

25

legislation allowing the reopening of already-final judgments of *conviction* (as distinct from already-final judgments of *dismissal*), and we have found none.

Quite the opposite. While the *Way* decision did not directly address whether the legislation at issue intruded upon the core function of the judiciary, it strongly rejected the claim there was anything inherently problematic with legislation permitting the reopening of final judgments of conviction. (*Way*, *supra*, 74 Cal.App.3d at p. 180 ["[I]n this case final judgments will be reduced …. In view of the legislative objective, the final judgment rule must yield."]; *id.* at p. 181 ["There is nothing sacred about a final judgment of imprisonment which immunizes it from the Legislature's power to achieve equality among past and new offenders."] (conc. opn. of Friedman, J.).) Courts following the *Way* decision have ruled similarly. (*Chavez*, *supra*, 114 Cal.App.4th at p. 1000 ["A] final judgment is not immune from the Legislature's power to adjust prison sentences for a legitimate public purpose."]; *People v. Community Release Bd.* (1979) 96 Cal.App.3d 792, 800 ["[L]egislation reducing punishment for crime may constitutionally be applied to prisoners whose judgments have become final."].) In accordance with these authorities, we conclude the separation of powers concerns discussed in *Bunn* and *King* do not apply to section 1170.95.

There is another reason we do not accept the People's separation of powers argument. In *Bunn*, the challenged legislation—a savings clause permitting prosecutors to refile otherwise time-barred actions against criminal defendants who were acquitted and obtained final judgments of dismissal—"thwart[ed]" the final judgments of dismissal, which had no import whatsoever if the prosecution elected to recharge the defendant.

26

(*Bunn*, *supra*, 27 Cal.4th at p. 17.)  Here, section 1170.95 provides a mechanism by which a successful petitioner may obtain vacatur of his or her judgment of conviction. However, it also requires the trial court to resentence the petitioner subject to constraints arising from the original judgment of conviction.  (*Id.*, subd. (d)(1).)

For instance, a court must resentence a petitioner "on any remaining counts" of which the petitioner was found guilty in the original judgment.  (§ 1170.95, subd. (d)(1).) If the petitioner was charged generically with murder and a target offense was not charged, the conviction is redesignated "as the target offense or underlying felony" giving rise to the original murder conviction.  (*Id.*, subd. (e).)  Further, the original judgment sets an upper cap on the sentence a petitioner may receive during resentencing.  (*Id.*, subd. (d)(1).)  In short, these limitations respect the original judgment in a sense, despite the fact that petitioners may obtain vacatur of their convictions and resentencing.  For this independent reason, we conclude section 1170.95 does not "defeat or materially impair the inherent functions" of the judicial branch.  (*Rosenkrantz, supra*, 29 Cal.4th at p. 662.)

Further underscoring our conclusion today is the fact that there is substantial precedent for remedial legislation authorizing the ameliorative reopening of final judgments of conviction to benefit criminal defendants.  One key example is the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)), which amended the Three Strikes Law to reduce the punishment for certain third strike defendants.  (§ 1170.12, subd. (c)(2)(A), (C).)  It created a procedure permitting a person serving a sentence under the Three Strikes Law to "file a petition for a recall of sentence … before the trial court that entered the judgment of conviction" and obtain

27

resentencing if he or she would have qualified for a reduced sentence under the amended law. (§ 1170.126, subd. (b).) Resentencing is available to petitioners serving both final and nonfinal sentences. (*People v. Conley* (2016) 63 Cal.4th 646, 657.)

Another example is the Safe Neighborhoods and Schools Act, which redefined common theft- and drug-related felonies as misdemeanors for many offenders. (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014).) It permits eligible persons serving a felony sentence for redefined offenses as of the legislation's effective date to "petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing" under the provisions of the amended law. (§ 1170.18, subd. (a).) Further, it permits eligible persons who already completed a sentence for a covered offense to "file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors." (*Id.*, subd. (f).) These procedures are available "to all previously sentenced defendants who seek resentencing, regardless of whether their judgments have become final on direct review." (*People v. DeHoyos* (2018) 4 Cal.5th 594, 604.)

Although these are perhaps the most well-known examples of legislation allowing petitioners to reopen final judgments of conviction without regard to their finality as of the effective date of the legislation, they are not the only such instances of which we are aware. (See Health & Saf. Code, § 11361.8, subd. (a) [petition procedure to recall or dismiss sentences for persons currently serving sentences for specified drug-related offenses if persons would not have been guilty of an offense or would have been guilty of a lesser offense under Prop. 64, the Control, Regulate and Tax Adult Use of Marijuana

28

Act]; Pen. Code, § 1170.22 [petition procedure to recall or dismiss sentences, vacate convictions, and obtain resentencing for persons serving sentences for engaging in prostitution with prior prostitution conviction and knowledge of positive acquired immunodeficiency syndrome (AIDS) test results]; Pen. Code, § 1170.91 [petition procedure to recall sentence and obtain resentencing for persons currently serving felony sentences if persons are or were United States military members and may be suffering from sexual trauma, traumatic brain injury, posttraumatic stress disorder, substance abuse, or mental health problems as a result of military service].)

The prevalence of such legislation is not a sufficient reason on its own to affirm the constitutionality of section 1170.95 on separation of powers grounds.  However, in our view, it confirms there is nothing especially unique about section 1170.95, which appears to us to constitute a legitimate and ordinary exercise of legislative authority. Further, it demonstrates the sweeping breadth and potentially drastic implications of the People's separation of powers argument.  Extending the holdings of the *Bunn* and *King* decisions to prohibit the retroactive reopening of final judgments of conviction would call into question the constitutionality of all the statutory provisions described *ante*, and potentially others.  Because we conclude such an extension is unwarranted, we need not grapple with those potentially far-reaching consequences any further today.

For all the foregoing reasons, we conclude section 1170.95 does not intrude upon a core function of the judiciary.  We further conclude the Legislature acted in conformity with its institutional authority when it approved section 1170.95.

29

C

Next, the People contend section 1170.95 violates the rights of crime victims enshrined in Marsy's Law. Marsy's Law amended article I, section 28 of the California Constitution and provisions of the Penal Code to strengthen a "broad spectrum of victims' rights …." (*People v. Gross* (2015) 238 Cal.App.4th 1313, 1317, 1318.) To name a few illustrative examples, it guaranteed victims a right to seek and secure restitution from convicted defendants (Cal. Const., art. I, § 28, subd. (b)(13)); increased the amount of time between parole hearings for convicted defendants (Pen. Code, § 3041.5); and afforded victims a right to prevent the disclosure to the defendant, or persons acting on the defendant's behalf, of privileged or confidential information (Cal. Const., art. I, § 28, subd. (b)(4)).

When determining whether Marsy's Law has been violated, our task is to interpret and apply the initiative's language to effectuate the voters' intent. (*Estate of Casserley* (2018) 22 Cal.App.5th 824, 833.) " 'We therefore first look to "the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context." ' [Citations.] ' " 'When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it.' " ' " (*Ibid.*)

The People argue section 1170.95 violates a provision in Marsy's Law affording victims a right to "a speedy trial and prompt and final conclusion of the case and any related post-judgment proceedings." (Cal. Const., art. I, § 28, subd. (b)(9).) This right is enumerated with 16 other rights in section 28, subdivision (b) of the Constitution, and is made enforceable under subdivision (c) by the victim, among others. According to the

30

People, section 1170.95 denies victims their speedy trial right because it "creat[es] an entirely new path for murderers to reduce their lawfully imposed sentences …."  We disagree.

Marsy's Law established a victim's right to a "prompt and final conclusion" to postjudgment proceedings.  (Cal. Const., art. I, § 28, subd. (b)(9).)  And, in furtherance of that right, it substantially amended Penal Code provisions pertaining to parole.  (Pen. Code, § 3044; *In re Vicks* (2013) 56 Cal.4th 274, 283.)  But it did not foreclose post-judgment proceedings altogether.  On the contrary, it expressly contemplated the availability of such postjudgment proceedings, including in section 28, subdivision (b)(7) of the Constitution, which affords victims a right to reasonable notice of "parole [and] other post-conviction release proceedings," and in subdivision (b)(8), which grants victims a right to be heard at "post-conviction release decision[s] …."

Both the Legislature and courts have recognized that victims may exercise these rights during postjudgment proceedings that existed at the time the electorate approved Marsy's Law, as well as postjudgment proceedings that did not exist when Marsy's Law was approved.  (§ 1170.126, subd. (m); *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1300 [victims have right to be heard at dangerousness and resentencing hearings under Prop. 36].)  It would be anomalous and untenable for us to conclude, as the People impliedly suggest, that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time

Marsy's Law was approved simply because the voters granted crime victims a right to a "prompt and final conclusion" of criminal cases. (Cal. Const., art. I, § 28, subd. (b)(9).)[6]

The People also argue section 1170.95 violates Marsy's Law because it deprives victims of their right "[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made." (Cal. Const., art. I, § 28, subd. (b)(9).) They argue trial courts are not required, or even permitted, to consider the safety of the victim or the public under section 1170.95. Assuming without deciding the disposition of a section 1170.95 petition is a postjudgment release decision, we find no merit to the People's claim.

The People are correct that the safety of the victim and the public are not pertinent to whether a court may vacate the petitioner's murder conviction and resentence the petitioner. As noted *ante*, that determination turns on whether the original charging document permitted the prosecution to proceed under the felony-murder rule or murder under the natural and probable consequences doctrine, the petitioner was convicted or accepted a plea offer of murder, and the petitioner could not be liable for murder as a result of the legislative amendments to sections 188 and 189. (§ 1170.95, subd. (a).)

---

[6]    Further, we discern no other reason why a victim cannot receive a prompt and final conclusion under section 1170.95. Section 1170.95 creates expeditious deadlines for the petitions to which it applies, including a 60-day deadline for the prosecutor to respond to the resentencing petition and a 30-day deadline for the petitioner to reply, deadlines which may only be extended for good cause. (*Id.*, subd. (c).) If the court issues an order to show cause, it must then hold a hearing within 60 days to determine whether to vacate the murder conviction and resentence the petitioner, another deadline subject to extension only for good cause. (*Id.*, subd. (d)(1).)

However, the decision whether to vacate the murder conviction and resentence the petitioner is not the only determination required by section 1170.95. If a court rules a petitioner is entitled to vacatur of his or her murder conviction, it must then resentence the petitioner on any remaining counts. (*Id.*, subd. (d)(1).) During resentencing, the court may weigh the same sentencing factors it considers when it initially sentences a defendant, including whether the defendant presents "a serious danger to society" and "[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed." (Cal. Rules of Court, rule 4.421(b)(1), (c).) At minimum, the trial court's ability to consider these factors during resentencing ensures the safety of the victim, the victim's family, and the general public are "considered," as required by Marsy's Law. (Cal. Const., art. I, § 28, subd. (b)(16).)

Next, the People argue section 1170.95 conflicts with provisions in section 28, subdivision (a) of the Constitution, setting forth the voters' findings and declarations. Those provisions provide as follows: "The People of the State of California find and declare … [¶] (4) The rights of victims … are enforceable through the enactment of laws and through good-faith efforts and actions of California's elected, appointed, and publicly-employed officials…. [¶] … [¶] (6) Victims of crime are entitled to finality in their criminal cases." (Cal. Const., art. I, § 28, subd. (a)(4), (6).) However, as noted *ante*, the enforcement provision of section 28 only applies to the substantive rights enumerated in subdivision (b)—not the findings and declarations set forth in subdivision (a). (*Id.*, subd. (c).) In light of this structure, it is clear to us the findings and declarations in subdivision (a) "represent only a general statement of a problem identified by [the]

33

Legislature, and the goal the Legislature hoped to achieve," not an independent source of enforceable rights. (*People v. Superior Court* (*Johnson*) (2004) 120 Cal.App.4th 950, 956.)

Finally, the People claim section 1170.95 violates uncodified initiative provisions finding and declaring: (1) the criminal justice system has failed to "expeditiously finalize the sentences and punishments of criminal wrongdoers"; and (2) Marsy's Law was enacted to spare victims' families "prolonged and unnecessary suffering." (Prop. 9, §§ 2, 3.) "[T]he statements of purpose and intent in [an] 'uncodified section ... properly may be utilized as an aid in construing' [an initiative], but they 'do not confer power, determine rights, or enlarge the scope of [the] measure.' " (*People v. Guzman* (2005) 35 Cal.4th 577, 588.) Because the People's claim would require us to expand the scope of Marsy's Law beyond its codified text, we find no merit to the People's contention.

D

The People raise one final set of challenges to Senate Bill 1437. They caution the hearing procedures and remedies established by section 1170.95 may violate the constitutional rights of petitioners seeking to vacate their convictions and obtain resentencing. They contend the procedure permitting the prosecution to present evidence during resentencing "potentially violates the principle of double jeopardy" and is "unlikely to stand up to constitutional scrutiny." Further, they claim the remedies under section 1170.95 may violate petitioners' rights to due process and a jury trial.

We note there is authority calling into question the merits of at least some of the People's arguments. (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1114–1115 [rejecting

34

defendants' arguments that section 1170.95 violated their constitutional right to a jury]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["[T]he retroactive relief (defendants) are afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis.  Rather, the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights."].)

However, we need not decide these matters to resolve this appeal.  The People are the individuals on whose behalf violations of criminal laws are prosecuted.  (*Abbott Laboratories v. Superior Court* (2018) 24 Cal.App.5th 1, 18.)  But they do not represent the particularized interests of persons who have been accused of criminal offenses or petitioners seeking relief from convictions.  Therefore, the People lack standing to challenge the hearing and remedy provisions of section 1170.95 based on any alleged infringement on petitioners' constitutional rights.  (*In re Cregler* (1961) 56 Cal.2d 308, 313 ["[O]ne will not be heard to attack a statute on grounds that are not shown to be applicable to himself …."]; *Mathews v. Becerra* (2017) 7 Cal.App.5th 334, 348, fn. 2, review granted May 10, 2017, S240156 ["One may not generally claim standing to vindicate the constitutional rights of others."].)

IV

DISPOSITION

The order is reversed.[7]

McCONNELL, P.J.

I CONCUR:

IRION, J.

---

[7] Lamoureux asks us to direct the trial court to assign the matter on remand to Judge Angel M. Bermudez, the sentencing judge in her criminal trial. We decline her request as prematurely raised because we have no way of knowing whether Judge Bermudez will be available to resentence her at the appropriate time, if resentencing is warranted. Upon remand, it will the responsibility of the sentencing court to make that determination. (§ 1170.95, subd. (b)(1).)

O'Rourke, J., dissenting.

I respectfully dissent. Senate Bill No. 1437 is an unconstitutional amendment to Proposition 7, in which the voters increased the punishment for first degree murder from an indeterminate term of life to a term of 25 years to life and for second degree murder from a term of five, six or seven years to 15 years to life. (See *People v. Cooper* (2002) 27 Cal.4th 38, 41-42.) "The purpose of [Proposition 7] was to substantially increase the punishment for persons convicted of first and second degree murder." (*Cooper*, at p. 42.) Proposition 7 did not authorize the Legislature to amend its provision without voter approval. (*Id*. at p. 44.) Senate Bill No. 1437 addresses sentencing for first and second degree murder,[1] the very same subject matter encompassed by Proposition 7, by undoing application of the penalties the voters designated in Proposition 7 to those defendants coming within Senate Bill No. 1437's reforms. In short, the Legislature decided among other things that certain categories of felony murder should not be punished and enacted Senate Bill No. 1437 to eliminate them. This is the case even though the Legislature does not directly refer to sentencing in the revised Penal Code sections. "What the Legislature is prohibited from doing directly it cannot do indirectly." (*Rainey v. Michel* (1936) 6 Cal.2d 259, 282-283; accord, *Howard Jarvis Taxpayers' Assn. v. Fresno Metropolitan*

---

[1] See Legislative Counsel's Digest, Senate Bill No. 1437 (2017-2018 Reg. Sess.), Summary Digest, page 2, section 1, subdivisions (b), (e) ["There is a need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides"; "Reform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual"] at <**https://perma.cc/2JB3-8T2T**>.

*Projects Authority* (1995) 40 Cal.App.4th 1359, 1375.) By narrowing the scope of liability for felony murder and murder under a natural and probable consequences theory, the law eliminates all punishment for some defendants whom the Proposition 7 voters had decided should be punished by the specified prison terms. Stated simply, Senate Bill No. 1437 now "prohibits what the initiative authorizes . . . ." (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571.)

Thus, the revisions put into place by Senate Bill No. 1437 are an impermissible exercise of legislative authority. Under the California Constitution, the people of this state reserve to themselves the power of initiative. (Cal. Const., art. IV, § 1; see *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1042.) "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. II, § 8, subd. (a).) The Constitution further provides that "[t]he Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const. art. II, § 10, subd. (c).) Thus, " '[w]hen a statute enacted by the initiative process is involved, the Legislature may amend it only if the voters specifically gave the Legislature that power, and then only upon whatever conditions the voters attached to the Legislature's amendatory powers.' " (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 434, see *Howard Jarvis Taxpayers Association v. Newsom* (2019) 39 Cal.App.5th 158, 167 [voters' power to decide whether Legislature can amend or repeal initiative statutes is

2

"absolute"]; see *O.G. v. Superior Court* (2019) 40 Cal.App.5th 626, 628 ["Under the guise of 'amendment,' an initiative may not be 'annulled' by the Legislature"].)

Though courts generally accord a strong presumption of constitutionality to the Legislature's acts (*Amwest Surety Insurance. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1253; *B.M. v. Superior Court of Riverside County* (2019) 40 Cal.App.5th 742, 748), the presumption cannot apply here, where Senate Bill No. 1437 changes definitions that were integral to the increased penalties for murder enacted by the voters in Proposition 7. The voters are presumed to have been aware of definitions of first and second degree murder, including felony murder, when they enacted that initiative. (See *People v. Gonzales* (2017) 2 Cal.5th 858, 869-871 [electorate is presumed to be aware of existing laws and their judicial construction in effect at the time legislation is enacted, including legislation enacted by initiative]; *People v. Bloomfield* (2017) 13 Cal.App.5th 647, 653 [same].) Such an overruling of the People's wishes "violates the well settled rule that the Legislature may not enact a law that thwarts the initiative process without the consent of the people." (*O.G. v. Superior Court*, *supra*, 40 Cal.App.5th at p. 630.)

For the foregoing reasons, I would affirm the trial court's order denying Lamoureux's Penal Code section 1170.95 petition.

O'ROURKE, J.

3